**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARK MADSON, as Trustee of the MJM Trust,

Plaintiff,

v.

ASTRA NAVIGATION, INC.,

Defendant.

Case No. 26-cv-06523-BAS-SBC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SEAL (ECF No. 4)**

Before the Court is the motion of Plaintiff Mark Madson, as trustee of the MJM Trust ("Plaintiff"), to file under seal its Complaint, its application for a temporary restraining order ("TRO"), and its supporting declaration and exhibits ("Motion to Seal"). (ECF No. 4.)

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Seal. (*Id.*)

## I. BACKGROUND

Plaintiff Mark Madson, as trustee of the MJM Trust, is a preferred stockholder of Defendant Astra Navigation, Inc. ("AstraNav"), a privately held Delaware corporation. (Compl. ¶¶ 9–10, 14, ECF No. 1.) Parties' Investors' Rights Agreement ("IRA") gives certain investors a contractual right to inspect AstraNav's books and records. (*Id.* ¶¶ 13–15.) Plaintiff alleges that after it requested an inspection in October 2026, AstraNav

conditioned access on terms the IRA does not authorize. (*Id.* ¶¶ 18–22.) Plaintiff further alleges that AstraNav then sought stockholder approval of a proposed transaction that would amend the IRA and eliminate Plaintiff's inspection right. (*Id.* ¶¶ 5–6, 25.) Plaintiff brings a single claim for breach of contract. (*Id.* ¶¶ 35–42.) Plaintiff has applied for a TRO compelling production of the requested records and delaying the transaction's initial closing, which is scheduled for approximately one month after Plaintiff's inspection request. (ECF No. 4.) Plaintiff now moves to seal the Complaint, the TRO application, and the supporting declaration and its exhibits, which include the IRA, the proposed amended IRA ("Amended IRA"), and the parties' correspondence. (ECF Nos. 1, 2, 3, 4.)

## II. LEGAL STANDARD

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1101. In other words, the presumption of public access fully applies to "dispositive pleadings," such as "motions for summary judgment and related attachments." *Kamakana*, 447 F.3d at 1179. However, the Ninth Circuit has "carved out an exception to the presumption of

access" to judicial records for a "*sealed discovery document* [attached] to a *non-dispositive* motion," such that "the usual presumption of the public's right of access is rebutted." *Id.* (internal citations omitted).

The Ninth Circuit, thus, applies different standards for evaluating requests to seal documents accompanying dispositive motions and those accompanying non-dispositive motions. *Kamakana*, 447 F.3d at 1179. When the underlying motion is more than tangentially related to the merits (*e.g.*, a dispositive motion), the "compelling reasons" standard applies. *Id.*; *see also Ctr. for Auto Safety*, 809 F.3d at 1096–98. "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). However, when the underlying motion is only tangentially related to the merits, the "good cause" standard applies, and a district court may issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at 1180.

## III. ANALYSIS

### A. The Documents Are More Than Tangentially Related to the Merits

The documents Plaintiff seeks to seal are its Complaint and the papers filed in support of its TRO application, which seeks the same relief as the Complaint. (ECF Nos. 1, 2, 3, 4.) Both are more than tangentially related to the merits. *See Ctr. for Auto Safety*, 809 F.3d at 1101–02 (applying the compelling reasons standard to a motion for a preliminary injunction); *Pac. Marine Propellers, Inc. v. Wartsila Def., Inc.*, No. 17-CV-555-L-NLS, 2018 WL 11457880, at *1 (S.D. Cal. Nov. 5, 2018) ("The compelling reasons standard applies to all motions except those that are only 'tangentially related to the merits of a case.' . . . Defendants' summary judgment motion is more than tangentially related to the merits") (citing *Kamakana*, 447 F.3d at 1179). Accordingly, the Motion to Seal is subject to the "compelling reasons" standard. *See Kamakana*, 447 F.3d at 1179.

**B. "Compelling Reasons" Analysis**

Here, Plaintiff asks to seal its Complaint, its TRO application, and the supporting declaration with all exhibits, including the IRA and the proposed Amended IRA; it would lodge unredacted versions under seal and file redacted public versions. Plaintiff gives three reasons: (1) AstraNav's directors filed the IRA and the amended version under seal in *Cassidy v. Toutov*, C.A. No. 2026-0530-PAF (Del. Ch. filed April 24, 2026); (2) the filings recite AstraNav financial information Plaintiff received as a "Major Investor" under the IRA's confidentiality provision; and (3) the financing transaction, which is set to close shortly, has not been publicly announced by the privately held company. Plaintiff concedes that the Delaware sealing does not resolve the question here and that the confidentiality interests belong to AstraNav, not to Plaintiff, and it offers to file narrower redactions if the Court directs. (ECF No. 4.) The Court agrees that the Delaware sealing is not dispositive; this Court must independently determine whether compelling reasons support sealing here. *See Kamakana*, 447 F.3d at 1179. The Court addresses each category of information in turn.

**1. Confidential IRA Contract Terms**

Preventing the release of trade secrets generally constitutes a compelling reason to seal documents that contain them. *Kamakana*, 447 F.3d at 1179; *see also Nixon*, 435 U.S. at 598 (observing that the "common-law right of inspection has bowed before the power of a court to insure that its records" are not used as "sources of business information that might harm a litigant's competitive standing"); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1226–28 (Fed. Cir. 2013) (holding that under Ninth Circuit law, detailed product-specific information and internal reports are appropriate to seal under the "compelling reasons" standard where that information could be used to the company's competitive disadvantage).

The Ninth Circuit and courts within it have held that compelling reasons exist to seal agreements that contain trade secrets, including bargained-for provisions between parties. *See Mine O'Mine, Inc. v. Calmese*, No. 2:10-cv-00043-KJD, 2012 WL 1279827, at *4 (D.

Nev. Apr. 16, 2012) ("Because these hourly billing rates are competitively sensitive and not publicly known, it is appropriate to file them under seal"), *aff'd*, 489 F. App'x 175 (9th Cir. 2012); *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (finding compelling reasons for sealing "pricing terms, royalty rates, and guaranteed minimum payment terms"); *Nicolosi Distrib., Inc. v. Finishmaster, Inc.*, No. 18-cv-03587-BLF, 2018 WL 10758114, at *2 (N.D. Cal. Aug. 28, 2018) ("[C]ompelling reasons exist [to seal three contracts] because they contain proprietary and confidential business information, including potential trade secrets and business practices, such as product rates and purchase requirements."); *Cypress Semiconductor Corp. v. Fujitsu Semiconductor Ltd.*, No. 20-CV-00193-LHK, 2020 WL 11567020, at *2 (N.D. Cal. Feb. 26, 2020).

However, there are limitations on the extent to which terms of agreements can be sealed. *Upper Deck Co. v. Pixels.com, LLC*, No. 24-CV-00923-BAS-DEB, 2025 WL 3536115, at *6 (S.D. Cal. Dec. 9, 2025). For example, if certain terms are "otherwise publicly known," they may not be sealable. *Huawei Techs. Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 1004 (N.D. Cal. 2018). Additionally, if terms of licensing agreements appear to be boilerplate, courts may require the moving party to "explain[ ] why [those] provisions are so unique to that agreement that disclosure would cause significant harm." *Id.* Further, even when courts have found licensing terms to constitute trade secrets, they have still limited permissible redactions to only specific portions of those clauses. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967 CW, 2014 WL 662545, at *1 (N.D. Cal. Feb. 20, 2014) ("[O]nly the specific dollar amounts . . . may be sealed"); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. C 09-3329 CW, 2014 WL 12997312, at *1 (N.D. Cal. June 10, 2014) (same).

Here, AstraNav's November 9, 2026 email to stockholders states that the proposed financing documents, including the amended Investors' Rights Agreement, "generally track the existing Series Seed shares and follow the terms in the standard National Venture Capital Association ['NVCA'] form agreements upon which almost all preferred financing documents are based." (ECF No. 2, Ex. 4.) Plaintiff does not identify any provision of the

IRA that departs from those standard forms, and standard form language of this kind generally is not a trade secret. Thus, to the extent the terms of the IRA follow standard NVCA forms, the Court finds compelling reasons do not exist to seal them. *Huawei*, 340 F. Supp. 3d at 1004; *Software Inc. v. Loqate Inc.*, No. 22-CV-00552-BLF, 2022 WL 2720800, at *2 (N.D. Cal. June 2, 2022) (denying plaintiff's request to seal an agreement where "[m]uch of the Agreement appears to be boilerplate for which there appears to be no compelling reason for sealing."); *Cypress Semiconductor*, 2020 WL 11567020, at *2 ("Requests to seal entire contracts are frequently overbroad . . . where the requested sealing includes boilerplate terms and conditions contained within these documents, as well as the parties' definition of terms, none of which can reasonably be said to reveal any confidential information."); *Dominion Assets LLC v. Masimo Corp.*, No. 12-cv-02773-BLF, 2014 WL 12606653, at *2 (N.D. Cal. May 9, 2014) (same).

However, the Court finds that deal-specific numerical terms in the IRA and the proposed Amended IRA should be sealed (*e.g.*, the Major Investor thresholds in Section 1.18 of the IRA and Section 2.18 of the proposed Amended IRA). Similar to pricing terms and royalty rates, unique deal-specific provisions (including specific numerical values) constitute sealable trade secrets because their public disclosure may harm the holder's competitive standing. *See, e.g.*, *In re NCAA*, 2014 WL 662545, at *1 (finding that specific dollar amounts may be sealed "[b]ecause the public disclosure of some of these terms may undermine NCAA's ability to negotiate future licensing agreements with other broadcasters"); *Upper Deck Co. v. Pixels.com, LLC*, No. 24-CV-00923-BAS-DEB, 2026 WL 534414, at *4 (S.D. Cal. Feb. 26, 2026) ("[I]n the interest of narrowly tailoring Upper Deck's proposed redactions, the Court specifically finds that the sealing of specific numerical values of financial data is proper.").

Thus, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's request to the extent it seeks to redact the IRA and the proposed Amended IRA beyond their deal-specific numerical terms. The Court **GRANTS IN PART** Plaintiff's request to seal the deal-specific numerical terms identified above.

**2. Confidential Business Information**

In addition to trade secrets, "confidential business information," including "details of confidential licensing negotiations, and business strategies," may satisfy the "compelling reasons" standard. *See In re Qualcomm Litig.*, No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (observing that sealing such information "prevent[ed] competitors from gaining insight into the parties' business model and strategy"); *U.S. Bank Nat'l Ass'n v. N. Am. Title Ins. Co.*, No. 2:19-cv-00424-JAD-EJY, 2023 WL 4421580, at *2 (D. Nev. July 10, 2023) (granting sealing of portions of exhibits displaying internal conversations allegedly "maintained in a confidential manner for purposes of protecting internal business practices from disclosure" to prevent harming defendant's "competitive standing.").

Here, Plaintiff also seeks sealing because its filings discuss a financing transaction that is set to close shortly and that AstraNav has not publicly announced. Because the transaction has not been publicly announced, the Court finds it appropriate to seal the portions of Plaintiff's filings that disclose the details of that transaction.

Plaintiff further seeks sealing because its filings recite AstraNav financial information that Plaintiff received as a "Major Investor" subject to the IRA's confidentiality provision. Because AstraNav is privately held and this information is not otherwise public, disclosing it could harm AstraNav's competitive standing. *See Apple*, 727 F.3d at 1226–28; *Upper Deck*, 2026 WL 534414, at *4. Accordingly, the Court finds it appropriate to seal the portions of Plaintiff's filings that disclose AstraNav's nonpublic financial information.

In addition, having reviewed Plaintiff's filings, the Court finds that they contain the parties' communications about AstraNav's internal business affairs, such as the correspondence concerning Plaintiff's request for records. Thus, the Court **GRANTS IN PART** Plaintiff's request to seal as to confidential business communications, such as those concerning the financing transaction and Plaintiff's October 2026 inspection request. *U.S. Bank Nat'l Ass'n*, 2023 WL 4421580, at *2.

## IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Seal (ECF No. 4) as follows:

1. The Court **DENIES WITHOUT PREJUDICE** Plaintiff's request to the extent it seeks redactions broader than those permitted in Paragraph 3 below. This action shall remain on the public docket.

2. The Clerk of Court shall **FILE** the face page of the Complaint on the public docket as a placeholder, pending Plaintiff's filing of a redacted Complaint under Paragraph 3, and shall **ACCEPT** and **FILE UNDER SEAL** the unredacted versions of the Complaint, the TRO application, and the supporting declaration and exhibits lodged at ECF No. 2.

3. No later than **November 25, 2026**, Plaintiff shall file on the public docket redacted versions of those documents. The redactions shall be limited to (a) deal-specific numerical terms of the IRA and the proposed Amended IRA, such as the Major Investor thresholds; (b) nonpublic details of the pending financing transaction; (c) AstraNav's nonpublic financial information that Plaintiff received as a Major Investor; and (d) the confidential business communications described in Part III.B.2 of this Order. Plaintiff shall not redact provisions of the IRA or portions thereof that track standard NVCA form language.

4. If Plaintiff does not file redacted versions that comply with this Order by that date, the Court may direct the Clerk of Court to file the documents on the public docket in their entirety without further notice.

5. No later than **10:00 a.m. (Pacific Time) on November 20, 2026**, Plaintiff shall serve this Order and unredacted copies of the Complaint, the TRO application, the supporting declaration and exhibits, and the Motion to Seal to AstraNav to its chief executive officer and to its outside counsel identified in the record. (*See* ECF No. 2, Exs. 2–3.) No later than **November 20, 2026**, Plaintiff shall file a notice of service.

6. To the extent either Party wishes to renew its motion to seal for any document or portion thereof, that party is **ORDERED** to append to its briefing a table listing the title of the document, the ECF number of the public document, the ECF number of the lodgment, the page and line number(s) or the section or paragraph numbers of the proposed redactions (or stating that the party wishes to seal the entirety of the document), and the compelling reason for sealing each proposed redaction or document.[1]

**IT IS SO ORDERED.**

**DATED: November 19, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

[1] Moreover, Parties are advised to follow the Court's Standing Order, which notes, "[t]he fact that both sides agree to seal a document or that a stipulated protective order was issued is insufficient cause for sealing." Standing Order § 5.A ("§ 5.A"). "Parties often seek to seal a document only because another party designated the document as sensitive under a protective order . . . [i]n these circumstances, the moving party must first meet and confer with the designating party to determine whether the designating party maintains that any portion of the document must be filed under seal." *Id.* Then, "the designating party must file a response to the sealing motion within seven days that satisfies the sealing standard . . . If no response is filed, the Court may order that the document be filed in the public record." *Id.* The parties are warned that any renewed motion to seal must comply with § 5.A, and that failure to do so may result in denial of the motion. Because Plaintiff concedes that the confidentiality interests at issue belong to AstraNav, Plaintiff must meet and confer with AstraNav before renewing its motion to seal.